UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIKEB SADDOZAI,<br>Plaintiff,<br>v.<br>LONG, et al.,<br>Defendants. | Case No. 25-cv-07253-VC<br><br>**ORDER OF SERVICE** |

Shikeb Saddozai, a California state prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. The complaint was dismissed with leave to amend, and Saddozai filed a First Amended Complaint (FAC), which was also dismissed with leave to amend. Now before the court is Saddozai's Second Amended Complaint (SAC), which is ordered served on defendants Long and Valentine.

## DISCUSSION

### I. Standard of Review

A federal court must screen any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, to dismiss any claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the

alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions actually and proximately caused the deprivation of a federally protected right. *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of Section 1983 if he does an affirmative act, participates in another's affirmative act or fails to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Id.* at 633.

**II. Saddozai's Allegations**

Saddozai's SAC suffers from similar issues regarding allegations of supervisory liability and multiple insufficient or non-particular claims. However, he does allege particular facts against the two named defendants, correctional officer Long and correctional sergeant Valentine. *See* Dkt. No. 27-1. The following is a paraphrased version of Saddozai's allegations:

Saddozai was transferred to Pelican Bay State Prison (PBSP) around May 2025. Dkt. No. 27-1 at 20. He had 18 boxes of belongings, which were inspected by San Quentin State Prison officials for contraband before being transferred to PBSP in July 2025. *Id.* Defendants Long and other correctional officers inspected his property upon arrival outside of his presence. *Id.* Defendant Long confiscated multiple items as non-allowable or contraband. *Id.* Ten boxes of legal papers were seized and placed outside of Saddozai's control. *Id.* at 21. Days later, Saddozai reported to defendant Long who forced Saddozai to sign for his property in advance under "threat, duress, coercion, and fear" or else he would not receive his property. *Id.* His property was then dumped into trash bags and mixed together negligently. *Id.* Some legal documents were ripped open and destroyed, and food had been opened and spilled in the bags. *Id.* A chemical agent which Saddozai believed to be pepper spray was sprayed in the bag. *Id.* Defendant Long refused to allow Saddozai inspect his property and did not provide a receipt. *Id.*

Defendant Long then provided a "property confiscation receipt" that incompletely listed

some of the property defendant Long had confiscated, which included a typewriter, legal books, C.D.'s, DVD's, thumb drives containing legal information and health records, stationary, 10 boxes of confidential legal and medical papers, a prayer rug (gray), the Quran, and other miscellaneous items. *Id.* at 22. Saddozai was given no opportunity by Defendant Long to send the items home nor dispute the confiscation with a supervisor. *Id.* at 23. Upon further inspection, Saddozai found numerous property items missing. *Id.* On July 10, 2025, defendant Long met with Saddozai and said "you[‘re] lucky you[‘re] getting some property back, we have extra typewriters in storage, and [we are] waiting for Sergeant Valentin[e] to make a decision, me and the other I.S.U. officers read and went through your legal paperwork, you better not complain, or you won't get shit back, and we will come to your cell and take back all you shit I just gave you, and if you want something, you have to do something special for us." *Id.*

Saddozai filed multiple grievances against defendant Long and his supervisors complaining of the retaliatory confiscation, the review of confidential materials, and the threats by defendant Long. *Id.* at 24. Upon their denial, he filed grievance appeals. *Id.* On July 18, defendant Valentine stated "I am not giving you back the property Officer Long took from you because you filed complaints against my officer." *Id.* at 25. He also stated "I will throw you in the hole so that you cannot complain about your property or have anyone help you or have legal resources, and if you don't stop with your complaining and contacting my supervisors about your property you are going to get hurt." *Id.* Defendants Long and Valentine never explained why the details were left blank on the confiscation form nor why a watch commander's or witnessing officer's signature did not appear. *Id.*

Plaintiff makes other accusations against PBSP staff, though does not list them as defendants. More officers began participating in the retaliatory campaign to stop Saddozai from complaining. *Id.* at 26. The actions included requiring Saddozai to accept a cellmate with severe mental illness, throwing away his dinner tray, punching him in the genitals, and making verbal threats. *Id.* A law librarian refused to copy legal documents to prevent him from filing a civil action and would not provide him with confidentiality of his legal paperwork. *Id.* One librarian

released a memo that stated legal materials would not remain confidential, and another librarian read Saddozai's materials and refused to copy paperwork. *Id.* at 28.

When Saddozai was being transferred out of PBSP, a correctional officer refused to pack his property in the transport vehicle (which was not ADA compliant). *Id.* at 29. He contacted Secretary & Director Jeffrey Macomber regarding the property-related violations, but he did not act. *Id.*

Plaintiff also states that Long and Valentine, along with other unknown defendants, knew or should have known the confiscation of his legal property related to his criminal and civil cases contained evidence relevant to his conviction, sentence, and conditions of confinement, including his ability to practice his religion and live safely. *Id.* at 31.

Plaintiff seeks declaratory relief, injunctive relief, and damages. Dkt. No. 27-1 at 35.

## III. Analysis

Saddozai lists multiple actors in his complaint, though names only defendants Long and Valentine. *See id.* He also lists multiple causes of action, many of which are conclusory or unsupported by the factual allegations. *See id.* The court analyzes Saddozai's claims against defendants Long and Valentine below.

### A. Retaliation

A prisoner must allege (and ultimately prove) four elements in support of a First Amendment retaliation claim: (1) a state actor took some adverse action against the inmate; (2) the adverse action was because of the inmate's protected conduct; (3) the action either chilled the inmate's exercise of their First Amendment rights or would have chilled a person of ordinary firmness in the exercise of their First Amendment rights; and (4) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016). The mere threat of harm can be an adverse action under this test. *Id.* at 688-89; *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).

Here, both defendants Long and Valentine allegedly made statements to plaintiff that

could be construed as adverse action. According to Saddozai, defendant Long first threatened Saddozai when he said that he better not complain or he would not receive certain property back. Dkt. No. 27-1 at 23. Then, defendant Valentine allegedly refused to return his property because Saddozai filed complaints/grievances against defendant Long and threatened to throw him in the hole to prevent him from complaining or access to legal resources. *Id.* at 24. In the same interaction, he allegedly threatened bodily harm if Saddozai didn't stop complaining, stating that he is going to "get hurt." *Id.* These actions may chill a person of ordinary firmness from filing future grievances or seeking redress for harm that occur within the prison. Saddozai alleges an adverse action in the form of confiscation, as well as threats to chill his attempts to rectify the situation. *See id.* When liberally construed, Saddozai has stated a First Amendment retaliation claim against defendants Long and Valentine.

### B. Free Exercise and RLUIPA Claim

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). *Turner* sets out the four factor test for determining whether it is reasonably related to such an interest: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) whether "accommodation of the asserted constitutional right" will "impact . . . guards, other inmates, and the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of easy alternatives." *See id.* (quoting *Turner*, 482 U.S. at 89-90) (internal quotation marks and citation omitted). Saddozai also alleges a claim under the RLUIPA, which states in part "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive

means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Liberally construed, Saddozai has stated a violation of his free exercise rights under the First Amendment. Defendant Long allegedly confiscated two items relevant to Saddozai's religious expression: his prayer rug and his copy of the Quran. Dkt. No. 27-1 at 22. Defendant Valentine also allegedly participated in this by refusing to give the property back to Saddozai because he filed complaints against defendant Long. *Id.* at 25. It is unclear what penological interest taking these items served. However, Saddozai's original amended complaint and the attachment provided states that the prayer rug is blue. While his newest amended complaint now changes the color to gray, the exhibit attached directly contradicts this new pleading. Dkt. No. 27-2 at 2. So, Saddozai's cognizable free exercise claim is due to the taking of his Quran, *not* his prayer rug, which the court previously found not to be the basis of a cognizable claim because of its color and potential affiliation with gang colors. Dkt. No. 26 at 3.

Saddozai's RLUIPA claim must fail because even if he prevails, he would not be entitled to the only relief available – injunctive relief – because he is no longer housed at PBSP. *See Sossamon v. Texas*, 563 U.S. 277, 285–88 (2011) (holding that the acceptance of federal funding does not waive states' sovereign immunity to damages suits). Furthermore, he does not allege a continued deprivation of the materials needed to practice his religion at his current institution. *See id.*

**C. Legal Documents**

Saddozai alleges the destruction of the legal mail hindered his access to the courts. To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 349-51. For the same reason as stated in the prior order of dismissal, Saddozai has not alleged an access to the courts claim because he does not allege actual injury. The dismissal attached to his complaint allows him to refile with the superior court, and this was not caused by interference by PBSP staff with his ability to litigate the claim. *See* Dkt. No. 27-2 at 15-16. Moreover, Saddozai points to no other specific legal case that was

hindered by defendants' actions. *See id.* It is also unclear the types of materials were read by defendant Long outside of being legal and/or medical, rendering the other constitutional claims raised by Saddozai related to these documents as overly vague.

## MOTION TO APPOINT COUNSEL

Saddozai's fourth request for appointment of counsel is denied. *See* Dkt. No. 29. "Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Id.* (*citing Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v. Agyeman*, 545 U.S. 1128 (2005)). A finding of "exceptional circumstances" requires an evaluation of the likelihood of the plaintiff's success on the merits and of the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. *See Agyeman*, 390 F.3d at 1103. Both factors must be viewed together before reaching a decision on a request for counsel under § 1915. *See id.*

Saddozai's likelihood of success on the merits is not high at the current stage of the case as defendants' have yet to respond to any allegations. His ability to articulate his claims appears adequate. The motion to appoint counsel is denied.

## CONCLUSION

Saddozai has stated a cognizable First Amendment Retaliation and Free Exercise claim against defendants Long and Valentine. Based on the foregoing, the court orders as follows:

1. The court orders that the following defendants be served electronically:
   a. Correctional Officer Long
   b. Correctional Sergeant Valentine

Service on the listed defendants will be effected via the California Department of Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the clerk is directed to serve on CDCR via email the following documents: the operative complaint, this order of service, a CDCR Report of

E-Service Waiver form and a summons. The clerk is also requested to serve a copy of this order on the plaintiff.

No later than 40 days after service of this order via email on CDCR, CDCR will provide the court a completed CDCR Report of E-Service Waiver advising the court which defendants listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) or which defendant(s) decline to waive service or could not be reached. CDCR also will provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, will file with the court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the clerk is requested to prepare for each defendant, if they have not waived service according to the CDCR Report of E-Service Waiver, a USM-285 Form. The clerk will provide to the USMS the completed USM-285 forms and copies of this order, the summons and the operative complaint for service upon each defendant who has not waived service. The clerk will also provide to the USMS a copy of the CDCR Report of E-Service Waiver.

2. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires defendants to cooperate in saving unnecessary costs of service of the summons and complaint. If service is waived, this action will proceed as if defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), defendants will not be required to serve and file an answer before sixty (60) days from the date on which the CDCR provides a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office. (This allows a longer time to respond than would be required if formal service of summons is necessary.) If defendants have not waived service and have instead been served by the USMS, then defendants shall serve and file an answer within twenty-one (21) days after being served with the summons and complaint.

3. The following briefing schedule shall govern dispositive motions in this action:

a. If the defendants intend to file a motion for summary judgment or other

dispositive motion, they must do so no later than fifty-six days from the date the answer is due. If the defendants file a motion for summary judgment, it shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If the defendants believe this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due. All papers filed with the court shall be promptly served on Saddozai.

At the time the dispositive motion is served, the defendants will also serve, on a separate paper, the appropriate notice or notices required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 4 (9th Cir. 2003). *See Woods v. Carey*, 684 F.3d 934, 940-941 (9th Cir. 2012) (*Rand* and *Wyatt* notices must be given at the time motion for summary judgment or motion to dismiss for nonexhaustion is filed, not earlier); *Rand* at 960 (separate paper requirement).

b. Saddozai's opposition to the motion for summary judgment or other dispositive motion shall be filed with the Court and served on the defendants no later than twenty-eight days after the date on which the defendant's motion is filed.

Before filing his opposition, Saddozai is advised to read the notice that will be provided to him by the defendants when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Saddozai is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to the defendants' summary judgment motion. Such evidence may include sworn declarations from himself and other witnesses, and copies of documents authenticated by sworn declaration. Saddozai will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c. The defendants shall file a reply brief no later than fourteen days after the date Saddozai's opposition is filed.

d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders later.

4. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. No further court order pursuant to Rule 30(a)(2) is required before the parties may conduct discovery.

5. All communications by Saddozai with the court must be served on the defendants, or the defendants' counsel once counsel has been designated, by mailing a true copy of the document to the defendants or counsel.

6. It is Saddozai's responsibility to prosecute this case. Saddozai must keep the court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

7. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than three days prior to the deadline sought to be extended.

8. Saddozai's motion for appointment of counsel is DENIED.

**IT IS SO ORDERED.**

Dated: November 24, 2026

VINCE CHHABRIA
United States District Judge